UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GERALD C. ARENDT and DAVID D. BROWN,

Plaintiffs,

v.

WASHINGTON-IDAHO-MONTANA CARPENTERS-EMPLOYERS RETIREMENT TRUST FUND and ZENITH ADMINISTRATORS, INC.,

Defendants,

and

UNITED STATES OF AMERICA,

Intervenor-Defendants

NO. CV-11-5135-LRS

ORDER GRANTING MOTION TO DISMISS (ECF No. 45)

**BEFORE THE COURT** is the Defendants' Motion To Dismiss (ECF No. 45), filed January 28, 2014. A telephonic hearing was held April 10, 2014. Jeffry K. Finer and Gery R. Gasick participated on behalf of the Plaintiffs; Robin L. Haynes and William M. Symmes participated on behalf of Defendants; and Kenneth E. Sealls participated on behalf of the Intervenor United States. Defendants Washington-Idaho-Montana Carpenters-Employers Retirement Trust Fund (hereafter "Fund") and Zenith American Solutions, Inc., (f/k/a Zenith Administrators, Inc.) ("Zenith") (collectively "Defendants"), jointly move for dismissal of Plaintiffs' First Amended Complaint for Declaratory Judgment and Injunctive Relief (ECF No. 28) ("Amended Complaint") pursuant to Fed.R.Civ.P. 12(b)(6). At the conclusion of oral argument on April 10, 2014, the Court took the matter under advisement. Upon

consideration of the written memoranda, the arguments of counsel, and the record, the Court grants Defendants' motion as provided herein.

**I. PROCEDURAL/FACTUAL BACKGROUND**

On September 13, 2011, Plaintiffs filed a complaint against the Secretary of Labor alleging that the elimination of the subsidized early retirement option of their retirement plan violated the Due Process Clause of the Fifth Amendment and that the distinction between early retirees already in "pay status" and those not yet retired amounts to a violation of the equal protection component of the Due Process Clause. The background facts that pertain to Plaintiffs' original Complaint are recited in the Order Granting Motion to Dismiss entered on March 9, 2014. (ECF No. 16) and will not be repeated here.

On March 9, 2012, judgment was entered by this Court in favor of the Secretary of Labor. (ECF No. 18). Plaintiffs appealed that judgment to the Ninth Circuit Court of Appeals. (ECF No. 23). On September 3, 2013, the Ninth Circuit vacated the trial court judgment and instructed the Court to dismiss the case without prejudice. The Ninth Circuit ruled that Plaintiff Arendt lacked standing to bring a claim that the elimination of his early retirement benefits violated the due process and equal protection clauses. (ECF No. 24 at 3). Because the Circuit found it was without jurisdiction to rule, the question of the PPA's[1] constitutionality was not decided. (ECF No. 24 at 4). On October 17, 2013, Plaintiffs filed their First Amended Complaint, substituting the Retirement Fund Trustees ("the Fund") and the Plan Administrator ("Zenith") as defendants in place of the Secretary of Labor. (ECF No. 28). Plaintiffs' claims under the First Amended Complaint include: (1) a retroactive taking in violation of the Fifth Amendment; and (2) gross discrimination among certain Fund participants in violation of the equal protection clause of the Fifth Amendment.

---

[1]Pension Protection Act of 2006 ("PPA"), Pub. L. No. 109-280, 120 Stat. 780 (Aug. 17, 2006).

According to their First Amended Complaint, Plaintiffs participate in a collectively bargained multiemployer plan that offered an early retirement pension benefit known as the "Rule of 80 Early Retirement" pension ("the Plan") that allowed participants to retire before age 65 without reducing their basic retirement benefit. In order to be eligible for the "Rule of 80," participants had to reach a total of 80 when adding (i) their age, and (ii) the number of years in which they participated in the plan and contributed 400 or more working hours. Summary Plan Description and Retirement Plan, as amended January 1, 2001 ("2001 Plan"), ECF No. 11-2 at 12. In August of 2009, the Plan notified Plaintiffs and other Plan participants that due to recent severe investment losses and the decline in the stock market, the Plan was underfunded and in "critical status." ECF No. 16 at 2. Because of the financial insecurity of the Plan—then less than 65 percent funded and projected to be underfunded for the Plan year beginning July 1, 2013—it was required to take measures in order to continue funding normal benefits to present and future retirees. *Id*. Acting pursuant to the PPA, the Plan's Board of Trustees decided to eliminate the Plan's adjustable benefits, including subsidized early retirement. Id.

## II. DISCUSSION

### A. Fed.R.Civ.P. 12(b)(6) Standard

A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from such allegations. *Mendocino Environmental Center v. Mendocino County*, 14 F.3d 457, 460 (9th Cir. 1994); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The complaint must be construed in the light most favorable to the plaintiff. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The sole issue raised by a 12(b)(6) motion is whether the facts pleaded, if established, would support

a claim for relief; therefore, no matter how improbable those facts alleged are, they must be accepted as true for purposes of the motion. *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S.Ct. 1827 (1989). The court need not, however, accept as true conclusory allegations or legal characterizations, nor need it accept unreasonable inferences or unwarranted deductions of fact. *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996).

As it is not necessary for the court to review materials outside of the pleadings in order to make its determination in this matter, Defendants' motion is not converted to a summary judgment motion under Fed. R. Civ. P. 56 and reliance on the 12(b)(6) standard is appropriate.

**B. Defendants' and Intervenor's Arguments**

1. **The Fund and Zenith are not government or state actors**.

Defendants and Intervenor (collectively "Defendants") argue that Plaintiffs' claims for violations of the 5th Amendment of the U.S. Constitution must be dismissed because the Fund and Zenith are private entities, not government or state actors. Citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936-937 (1982), Defendants conclude that because state action is required for Plaintiffs' Equal Protection and takings claims, *Sutton*[2] should apply to and preclude the bringing of their constitutional claims.

In accordance with the PPA, the Plan sponsor (the Plan's Board of Trustees) agreed that one of the ways they would rehabilitate the Plan was by eliminating all

---

[2]In *Sutton v. Providence St. Joseph Medical Ctr.,* 192 F.3d 826, 839 (9th Cir. 1999), the Ninth Circuit addressed "whether governmental compulsion in the form of a general statute, without more, is sufficient to deem a private defendant a governmental actor," and concluded that a "plaintiff must establish some other nexus sufficient to make it fair to attribute liability to the private entity." *Id*. at 841.

of the adjustable benefits offered by the Plan, including subsidized early retirement.[3] The Plan did not reduce accrued benefits payable at normal retirement age and did not cut any benefits of participants who retired and entered "pay status" (as defined in ERISA § 305(I)(6), 29 U.S.C. §1085(I)(6)) before they were notified that the Plan was in critical status. Defendants conclude that there is no state action sufficient to support a constitutional argument in this matter, especially when coupled with this Court's previous finding that Plaintiffs' loss of early retirement benefits pursuant to a Rehabilitation Plan adopted by their private pension plan, was not an impermissible taking, regulatory or otherwise, by the Government.

**2. The PPA is rationally based legislation and not unconstitutional.**

In August of 2009, the Retirement Plan, a collectively bargained multiemployer plan, notified its participants that it had suffered severe investment losses in the stock market decline of 2008 and early 2009, and was underfunded and in "critical status." The notice explained that the Plan was less than 65 percent funded and that the Plan was projected to have an accumulated funding deficiency for the plan year beginning July 1, 2013. As a result, the Retirement Plan was required under the PPA, to take steps to resolve its funding crisis so that it could continue to fund normal benefits for current and future retirees. ERISA § 302, 29 U.S.C. §1082. Although the PPA gives the plan sponsor (subject to collective bargaining) the ability to make such decisions, it protects participants' ability to receive normal retirement benefits. ERISA §305(e)(8)(B), 29 U.S.C. §1085(e)(8)(B).

The PPA's express authorization of the reduction or elimination of adjustable benefits (including early retirement benefits), through rehabilitation plans of those

---

[3] "Rule of 80 Early Retirement Pension," ("Rule of 80"), was funded at Section 3.08 of the Plan by an allocation of "20% of all negotiated Employer Contributions" via an additional and dedicated payroll contributions from Active Participants.

plans in critical status, is an exception to ERISA's general "anti-cutback rule." ERISA § 204(g), 29 U.S.C. § 1054(g). [4]

Defendants suggest that Plaintiffs' interest in employer-subsidized early retirement benefits was never absolute, but always was subject to elimination in the event of plan termination under ERISA Section 4041A, 29 U.S.C. § 1341a. Moreover, not only is the Government not taking any of the Plan's (or Plaintiffs') assets away through the PPA, but that legislation is directed to ensuring that plans facing dire financial circumstances can continue to pay normal retirement benefits without defaulting.

**C. Plaintiffs' Argument**

In opposing Defendant's Motion to Dismiss, Plaintiffs seek a ruling that the PPA as applied to Plaintiffs creates (1) an unconstitutional taking under the Takings Clause of the Fifth Amendment, and (2) a denial of Equal Protection under the Fifth Amendment.

///

///

---

[4] ERISA's anti-cutback rule provides, with certain exceptions not relevant here, that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g)(1). The rule applies to the participant's basic accrued benefit, as well as to accrued early retirement benefits, retirement-type subsidies, and optional forms of benefits. 29 U.S.C. § 1054(g)(2). Such benefits may only be eliminated or reduced by amendment on a prospective basis, i.e., with respect to benefits that have not yet accrued. *Allen v. Honeywell Retirement Earnings Plan, 382 F.Supp.2d 1139, 1149-50 (2005) citing Campbell v. BankBoston*, 327 F.3d 1, 8–9 (1st Cir.2003) (holding that elimination of a future expected benefit that has not yet accrued does not constitute an ERISA violation).

Plaintiffs assert, citing *Eastern Enterprises,*[5] that the Defendants' rehabilitation plan is mandated by the PPA pursuant to 29 U.S.C. §1085(a)(2)(A) and allegedly results in a retroactive elimination of previously "earned" and promised benefits. Therefore, Plaintiffs reason, this presents an "economic regulation" that can "effect a taking," in violation of the "Takings Clause of the Fifth Amendment." Plaintiffs claim that Defendants' rehabilitation plan was mandated by the PPA. Plaintiffs appear to argue, citing snippets of the lengthy *Eastern Enterprises* opinion, that the "mandated" rehabilitation plan reneged on a promise under contract because such a rehabilitation plan trumps the protection of ERISA's "anti-cutback" rule and uses ". . . a shorter cut than the constitutional way of paying for the change." *Eastern Enterprises*, 524 U.S. 498 at 528, 522- 523 (1998), quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416 (1922).

Plaintiffs further argue that they have a fundamental right to subsidized early retirement benefits and that their constitutional challenge to § 202 of the PPA is subject to higher scrutiny because its application in this case violates Plaintiffs' fundamental rights by allowing a retroactive taking of their early retirement benefits. Plaintiffs conclude that the PPA provision fails such strict scrutiny.

**D. Analysis**

The Court previously found that Plaintiffs failed to demonstrate any state action, which is a necessary predicate to a suit alleging due process and equal protection claims. Similarly, the Court again finds that Plaintiffs' Equal Protection and takings claims in the Amended Complaint fail to demonstrate any government action involving these Defendants who are private actors, and whom Plaintiffs allege were "compelled" to act by the government. The mere existence of the provisions in the PPA allowing the elimination of adjustable benefits does not amount to state

---

[5]*Eastern Enterprises v. Apfel*, 524 U.S. 498, 522-39 (1998).

action. Unlike the statute that is at issue in the *Eastern Enterprises* case, the PPA does not mandate a specific course of action but permits discretion to be exercised, provided that pension plans in critical financial status are addressed in a rational manner. Although Plaintiffs assert that the notice sent out to participants affected by the rehabilitation plan has language referencing the mandatory nature of the action being taken, this does not change the fact that no specific course of action was mandated by the PPA.

The Defendants exercised complete, autonomous discretion in creating a rehabilitation plan for the Fund. The PPA directed that the Fund's Board adopt and implement a rehabilitation plan to ensure normal benefits were paid, as the Fund was less than 65 percent funded and was projected to have an accumulated funding deficiency as early as July 2013. (ECF No. 11 at Exhibit 1). The collective bargaining parties to the Fund also agreed with the decision to eliminate the Rule of 80 benefits. No governmental actor coerced, directed, suggested, or even reviewed Defendants' actions in creating and dictating the contents of a rehabilitation plan. Simply put, Defendants (the Fund and Zenith) followed the law as private actors.

The Court also previously rejected an earlier argument by Plaintiffs relating to a "takings" claim that did not rely on the Fifth Amendment Takings Clause. Plaintiffs now specifically allege a takings claim under the Takings Clause. Plaintiffs essentially seek a determination of whether Defendants violated ERISA's anti-cutback statute,[6] in eliminating early retirement to those participants that are not in "pay status." While it is well established as a matter of law that government regulation can effect a Fifth Amendment taking,[7] not every economic change required by law constitutes a "taking" in violation of the Fifth Amendment. *Deltona Corp. v. U. S.*,

---

[6]Section 204(g), 29 U.S.C. § 1054(g) (2010).

[7]*Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 123, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978),

657 F.2d 1184, 1191 (1981).

Plaintiffs appear to argue that the early retirement benefit established in § Section 3.08 of the Plan at issue is protected by the anti-cutback statute, § 204(g), 29 U.S.C. § 1054(g), which Plaintiffs suggest "extends to all participants the right to 'grow into' a benefit subsidy by satisfying the plan's pre-amendment eligibility requirements." *See Bellas v. CBS, Inc.*, 221 F.3d 517, 527 (3d Cir.2000). In other words, Plaintiffs would prefer that if a plan is amended to eliminate a subsidized early retirement benefit for employees who have completed or nearly completed the pre-amendment eligibility requirements but are not in "pay status," an employee should be given the right to "grow into" early retirement benefits as long as an employee satisfies, or will be able to satisfy, the eligibility requirements prior to the amendment or after an amendment to the plan takes effect.

Plaintiffs would be eligible for early retirement benefits (retire before age 65 without reducing their basic retirement benefit) provided in the Summary Plan Description and Retirement Plan at issue, if they had met the Plan eligibility requirements–primarily attaining a total of 80 when adding (i) their age, and (ii) the number of years in which they participated in the plan and contributed 400 or more working hours pre-amendment or before the critical date of August of 2009.

The PPA exempted the Defendants' continued payment of early retirement benefits already in "pay status" as of a date certain but not thereafter. 29 U.S.C. §1085(e)(8)(A)(ii) ("exception for retirees") and §1085 (i)(6) ("pay status" definition). For example, a proper application approved and placed in pay status for a "Rule of 80" pension prior to August, 2009, continues to be paid by Defendants. That same application made in September, 2009, would be denied because the benefit, although "earned by service," was extinguished, as in Plaintiffs' cases, pursuant to the rehabilitation plan mandated by the PPA.

While both Plaintiffs had accrued significant points potentially leading to the right to retire at age 55 without reduction of benefits, neither Plaintiff was in "pay

status" before changes to the pension plan were made. "Adjustable benefits" are defined in the PPA to include "benefits, right, and features under the plan, including ... early retirement benefits not yet in pay status."[8] Plaintiffs, therefore, had an expectancy that they would receive the supplemental benefit but not an absolute right to collect under all circumstances and the timing of the rehabilitation plan. Although Plaintiffs will suffer no economic loss with respect to their normal retirement benefits, the elimination of early retirement benefits could reasonably be seen as upsetting their expectation that they would be able to retire early with full benefits. However, as the Court noted in *Concrete Pipe*, ". . . pension plans had long been subject to federal regulation, and those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust,* 508 U.S. 602, 645-46 (1993) (internal quotations omitted), *citing Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1,15-16 (1976) ("legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations.").

As for Plaintiffs' claim that the PPA impinges on their fundamental right to early retirement benefits under their Rule of 80 Plan, the Court finds early retirement is not recognized as a "fundamental right" as the great weight of authority suggests that even public employment is not a fundamental right, at least for purposes of substantive due process. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The Court also finds that a challenge to Section 202 of the PPA under the Equal Protection component of the Fifth Amendment is subject to rational basis review, not a strict scrutiny review. *Pension Ben. Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729 (1984); *U.S. Railroad Ret. Bd. v. Fritz*, 449 U.S. 166, 177 (1980). Because Section 202 of the PPA plainly

---

[8]ERISA § 305(e)(8)(A)(iv), 29 U.S.C. § 1085(e)(8)(A)(iv).

serves legitimate government purposes through means that are rationally related to those purposes, Plaintiffs cannot meet the "extremely high" burden applicable to rational basis review. *Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997). It would appear that Congress acted rationally, in theory and in fact, to protect and preserve Plaintiffs' and others' normal retirement benefits, and to avoid the cost to the Pension Benefit Guaranty Corporation[9] that would occur from a defaulting pension plan.

**III. CONCLUSION**

The Court believes the result it has reached is proper for the reasons set forth above and that it is consistent with the legislative goals of ERISA and the PPA, statutes which are to be construed liberally to achieve those goals. *FHA v. The Darlington, Inc*., 358 U.S. 84, 91 (1958) ("Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendment to achieve the legislative end."). The PPA, which ensures the long-term financial stability of pension plans, required the Defendants to modify the Plan which was done in accordance with the PPA. Under the terms of the amended Plan, Plaintiffs were not entitled to early retirement benefits (an adjustable benefit) because they were not in pay status.

///

///

---

[9]The Pension Benefit Guaranty Corporation ("PBGC ") is a federal corporation created under Title IV of ERISA whose purpose is to encourage the continuation and maintenance of certain private pension plans and to provide for payment of pension benefits under those plans. ERISA § 4002(a), 29 U.S.C. § 1302(a). At insolvency, the PBGC will provide financial assistance to the plan so it can provide benefits at the guarantee level. ERISA § 4261(a), 29 U.S.C. § 1431(a).

**IT IS ORDERED**:

1. Defendants' Motion to Dismiss, **ECF No. 45**, filed January 28, 2014, is **GRANTED**. Plaintiffs' claims are dismissed with prejudice.

2. The District Court Executive is directed to:

(a) enter this order;

(b) enter judgment consistent with this order; and

(c) close this file.

DATED this 2nd day of May, 2014.

***s/Lonny R. Suko***

LONNY R. SUKO
Senior United States District Judge